# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRY JOE TAYLOR, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 09-CV-129-CVE-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     DEFENDANT. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Terry Joe Taylor, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits. The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. *See* 28 U.S.C. § 636(b).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial

evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff first filed a claim for social security benefits on June 22, 2001, which was denied based upon available medical evidence after Plaintiff failed to appear for consultative medical examinations arranged by the Social Security Administration. [R. 71-74, 84-86]. Plaintiff did not appeal that determination. [Dkt. 17, p. 1]. Plaintiff filed a new application for disability insurance benefits[1] and a concurrent application for supplemental security income benefits[2] on July 13, 2004. [R. 43-48, 80-83]. In October 2004 and January 2005, Plaintiff appeared as scheduled for mental and physical examinations by agency consultative examiners. [R. 269-280, 282-285]. After his claims were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ) which was held June 16, 2008. [R. 22-40].

At the hearing, Plaintiff claimed to have been unable to work since November 25, 2000, due to chronic obstructive pulmonary disease (COPD), high blood pressure and anger management issues. [R. 31]. Plaintiff's counsel advised the ALJ that Plaintiff had some earnings in 2007 that, while not enough to be considered substantial gainful activity, would change Plaintiff's date last insured (DLI) to sometime in 2007. [R. 24-26]. He provided a 2007 tax document and asked the ALJ to have the earnings record updated and to check the date Plaintiff was last insured. [R. 24-26]. The ALJ indicated that he would do so. *Id.* Plaintiff testified that he had worked since 2002 part-time at

---

[1] To qualify for disability insurance benefits, Plaintiff must establish that he was disabled before the date his insured status expired. Title II of the Social Security Act, 42 U.S.C. § 423; *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990).

[2] Title XVI of the Social Security Act, 42 U.S.C. § 416(i).

Walmart and performed some "odd jobs" for cash for a tree-trimming service and for a plumber. [R. 30, 31, 35]. He testified he quit the Walmart job because he was "starting to get mean towards the kids," that the tree trimming job "just kind of petered out," that he worked for the plumber one to six hours a week, and that he had recently been paid to change out an outside faucet on a house. [R. 29-31].

On August 25, 2008, the ALJ entered the findings that are the subject of this appeal. [R. 12-21].[3] In the preliminary comments portion of his written decision, the ALJ stated Plaintiff's earnings record shows Plaintiff was insured through December 31, 2002. [R. 12]. The ALJ followed that statement with a conclusion that Plaintiff had not been under a disability as defined by the Social Security Act "from May 1, 2001 through the date of this decision." *Id.*[4]

The ALJ determined that Plaintiff has severe impairments consisting of degenerative disc disease, COPD, sinus bradycardia, hypertension and depression. [R. 14]. He found that Plaintiff retains the residual functional capacity (RFC) to perform light work activity, to perform simple and repetitive tasks and have incidental contact with the public. [R. 16]. Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff could not return to his past relevant work as a plumber's helper, material cutter and building maintenance worker but that there are other jobs available in the economy in significant numbers that Plaintiff could perform with his RFC. [R.19-20]. The case was thus decided at step five of the five-step evaluative sequence for

---

[3] The Appeals Council denied review of the findings of the ALJ on January 7, 2009. [R. 5-7]. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

[4] The ALJ repeated this conclusion in the final "Finding" of his written decision. [R. 20].

3

determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Medical History**

Treatment records in 2000 from Phillip E. Washburn, M.D., Plaintiff's general medical care provider, show that Plaintiff suffered lifelong depression and chronic anxiety for which significant relief was obtained with a prescription of Valium.[5] [R. 210-212]. A spirometry test[6] on July 18, 2000, revealed lung age at 62 and borderline obstruction. [R. 214]. Dr. Washburn referred Plaintiff to Patrick J. Fahey, M.D., a physical rehabilitation specialist, on October 17, 2000, for treatment of severe low back pain due to posterior disk herniation L5-S1 compressing the dural sac with mild canal stenosis and minimal impingement on the left S1 nerve root. [R. 202, 209, 213, 237-238]. Dr. Fahey treated Plaintiff with medication, exercise and trigger point injections through March 2001. [R. 220-238]. On April 19, 2001, Dr. Fahey reported that Plaintiff's back symptoms had significantly improved but that he continued to have occasional exacerbations relieved by frequent positional changes and frequent rest periods. [R. 219]. Dr. Fahey suggested Plaintiff decrease smoking and caffein[e] intake, continue temporary total disability status for about one month and to continue prescribed

---

[5] Valium (Diazepam) is used to relieve anxiety, muscle spasms and seizures and to control agitation caused by alcohol withdrawal. *See* drug information online at: http://www.nlm.nih.gov/medline plus/druginfo/meds/a682047.html (last reviewed - 09/01/2008).

[6] A pulmonary function test that measures how well the lungs take in and release air and how well they move gases such as oxygen from the atmosphere into the body's circulation. *See* medical encyclopedia online at: http://www.nlm.nih.gov/medlineplus/ency/article/003853.htm (update date: 10/14/2009).

pharmacologics, activity modifications and restrictions. *Id.* He also discussed with Plaintiff that he may benefit from a psychiatric evaluation. *Id.*

During this time, Plaintiff saw Dr. Washburn for various complaints, including blood pressure monitoring, PSA test, urinary problems and medication refills. [R. 204, 206, 207, 208, 215, 217]. Dr. Washburn noted on May 29, 2001, that Plaintiff "needs to get on SSI" after Plaintiff wrote to him advising that he no longer had a job or insurance and thanked him for twenty years of service. [R. 203, 218].

A report by William T. Bryant, Ph.D., dated June 5, 2001, reflects Plaintiff was referred by Dr. Washburn and was first seen on May 8, 2001, for chronic depression. [R. 240-243]. The record indicates Plaintiff was treated by Dr. Bryant a total of four times between May 8, 2001 and June 5, 2001. [R. 246-249].

Plaintiff claims May 1, 2001, as the onset date of his disability. [R. 80, 83]. There is no medical treatment documented for the time period between June 2001 and July 2005 in the administrative record.

On July 26, 2005, Plaintiff was seen in the St. John emergency room for complaints of chest pain and high blood pressure. [R. 368-374]. His employer was listed as Tuttle Plumbing and he gave a history of having seen a doctor the previous week who would not prescribe pain medication. [R. 368-369]. Plaintiff's blood pressure was brought under control with Clonidine.[7] Three days later, Plaintiff was seen at

---

[7] Clonidine is used alone or in combination with other medications to treat high blood pressure. *See* drug information online at: http://222.nlm.nih.gov/medlineplus/druginfo/meds/a682243.html (last revised 10/01/2008).

5

Family Medical Clinic in Sapulpa, Oklahoma.[8] The examining physician's assistant (P.A.) noted Plaintiff had been off his medication "since Dr. Washburn left, approximately three years ago." [R. 391]. Plaintiff was given samples of Celebrex and told to continue his Clonidine and frequent blood pressure checks. *Id.* Plaintiff was seen again by the P.A. on September 16, 2005, who noted consistently high blood pressure readings. [R. 390]. The P.A. increased the Clonidine dosage and added Toprol, a beta blocker. [R. 390]. The P.A. said: "While in the clinic, [Plaintiff] broke down. Suspect bipolar disease, but has never been verified. He has been on numerous antidepressants over the years and states that nothing has helped. Many things have actually 'made it worse.' Valium is the only thing that has provided any type of relief. I have known him for 20+ years, and since Dr. Washburn has left, he has not been taking Valium and 'everything is falling apart.' He has not been on Valium for several months now. He denies any suicidal thoughts, but states, 'I am just barely holding it together.' He appeared very anxious and became very tearful while in the clinic." *Id.* The P.A. prescribed Valium 5 mg. *Id.*

At Plaintiff's two week check-up on September 30, 2005, the P.A. reported Plaintiff was in a very agitated state and was complaining of back pain and blood pressure problems. [R. 387]. He noted that Plaintiff reported trouble buying medications but observed that the clinic had been providing samples "of everything we have available." *Id.* Flexeril, a muscle relaxant, was added to Plaintiff's medications and

---

[8] The records from the Family Medical Clinic in Sapulpa were submitted to the Social Security Administration by Plaintiff's attorney after the June 16, 2008 hearing but before the ALJ's August 25, 2008 decision.

he was warned to watch for oversedation on Valium and Flexeril. *Id.* The P.A. indicated he would try to arrange for Plaintiff to see a chronic pain specialist or orthopedist. *Id.*

Plaintiff was again treated by the P.A. on October 18, 2005. [R. 386]. Plaintiff reported consistently elevated blood pressure readings and that he was under a great deal of stress and was having a great deal of low back pain. *Id.* Plaintiff's medication regimen was continued. He was told to stay away from salt and to continue frequent blood pressure checks. *Id.*

On November 21, 2005, Plaintiff reported he had run out of Toprol two weeks before and complained "of every muscle in his body aching" even as a young child and though adulthood and stated that no etiology has ever been found. [R. 384]. The P.A. noted Plaintiff's compliance problems, "[n]ot because of attitude, but because of lack of insurance and lack of money and has to be managed with samples." *Id.* Plaintiff was counseled on the danger of stopping the beta blocker suddenly. He was given samples of Cymbalta[9] in addition to his regular medications. *Id.*

## Consultative Medical Opinions

The administrative record contains agency review forms dated October 1, 2001 [R. 250-251] and January 11, 2002 [R. 252-268] evaluating Plaintiff's claim for disability for a date last insured (DLI) of December 2001. The record also contains an evaluation dated January 19, 2004, for the period December 2002 to "currently" that does not state a conclusion. [R. 306].

---

[9] Cymbalta (Duloxetine) is used to treat depression and generalized anxiety disorder, excessive worry and tension that disrupts daily life and lasts for 6 months or longer, pain and tingling caused by diabetic neuropathy and fibromyalgia. *See* drug information online at: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a604030.html (last revised - 03/01/2009).

7

On October 15, 2004, Beau C. Jennings, D.O., examined Plaintiff and reported to the agency that Plaintiff's stated reason for disability was shortness of breath for the past two years, continuous cough and low back pain aggravated by any activity. [R. 269]. Physical examination revealed lungs clear to auscultation,[10] good grip strength, ability to manipulate small objects, full ranges of motion of upper and lower extremities, normal gait, no joint redness, tenderness or swelling, negative straight leg raising test, normal sensory examination and equal deep tendon reflexes. [R. 270]. Dr. Jennings wrote:

> Pulmonary function test was attempted and he could not exhale longer than 2.5 seconds on three attempts. He was told that this was not adequate for evaluation and he said, "This is all I can do. I cannot breathe any harder or longer." Therefore, no further attempts were made.

[R. 270]. Dr. Jennings assessed chronic low back pain and chronic lung disease. *Id.*

Suzanne House, an agency consultant, conducted a case analysis on November 16, 2004, "evaluating through 12/02 and currently." [R. 281]. Ms. House noted Plaintiff's 2000 MRI and EMG test results and lack of recent treatment "because he can't afford it." *Id.* She said:

> He was neurologically intact at a consultative internist examination 10/15/04 and had normal ROM, SLR, strength, reflexes, joint exam, and hand function. He did not cooperate with pulmonary testing.

[R. 281].

---

[10] Auscultation is the method of listening to the sounds of the body during a physical examination, usually done using a stethoscope. *See* medical encyclopedia online at: http://www.nlm.nih.gov/medlineplus/ency/article/002226.htm (Update Date: 5/21/2009).

On January 4, 2005, Plaintiff was examined by Larry Vaught, Ph.D. [R. 282-285].

Dr. Vaught conducted a mental status examination and concluded the following:

> In the area of social functioning, he presented as cooperative, though negative individual with a somewhat intense affect. He did seem anxious and reports he tends to worry, especially if he is not smoking marijuana.
>
> In the area of activities of daily living, he reports he is limited some by his back pain and emphysema. He does drive and drove to the exam. He occasionally works for Tuttle Plumbing, as noted above.
>
> In the areas of sustained concentration/persistence, he did not exhibit abnormalities. Short-term memory was possibly mildly impaired. Remote memory and fund of general information appear intact. Calculations, abstraction and basic judgment appear intact.

[R. 284].  His diagnosis was:

> Axis I       Anxiety Disorder, NOS
>                Rule Out Generalized Anxiety Disorder
>                Dysthymic Disorder
>                Cannabis Abuse
> Axis II     Avoidant Traits
>                Rule Out Avoidant Personality Disorder
> Axis III    Hypertension
>                Pain Disorder

*Id.*[11]

---

[11] Because mental disorders are often characterized by impairments in several areas, diagnosis requires a multiaxial evaluation. Axis I refers to the individual's primary clinical disorders that will be the foci of treatment; Axis II refers to personality or developmental disorders; Axis III refers to general medical conditions. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed.1994), pp. 25-32.

On January 19, 2005, C.M. Kampschaefer, Psy.D., prepared PRTs[12] and Mental RFC assessments based upon Plaintiff's condition on a DLI of December 31, 2002 [R. 30-320] and for Plaintiff's "current" condition [R. 286-302]. His findings for both periods were virtually identical except for a reference to Dr. Vaught's mental status exam on the notations portion of the PRT for the "current" period. [R. 298, 319].

A Physical RFC assessment, expressly noted to be a "current evaluation and DLI [of] 12/31/02," was prepared on January 21, 2005, by a medical consultant whose signature is illegible. [R. 321-327]. By way of explanation for the findings, the consultant wrote:

> 50 year old alleges emphysema, HBP, degenerative disc disease and arthritis with pain in multiple joints, PFS administered 10/15/04 showed best FEV-1,3.0. Claimant displayed full ROM at Int CE 10/15/04. Gait was normal, heel and toe was normal SLR was negative bi-laterally. Sensory exam was normal. DTR's are equal. Grip strength was good and claimant was able to manipulate small objects. BP was 180/90. MRI 10/10/2000 showed disc herniation at L5-s1, with mild canal stenosis.

[R. 322].

On May 17, 2007, another consultant whose signature is illegible, filled out a physical RFC assessment for a DLI of 12/31/2002. [R. 328-335]. The consultant said:

---

[12] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. Id. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2). At the ALJ hearing level, "[t]he decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

10

> 52 y/o alleged emphysema, HBP, DDD, and arthritis with pain in multiple joints. He underwent an epidural injection in 10/00. MER records the clmt had mild to moderate paraspinal musculature tenderness of the lumbosacral spine. Pain was improving. Extremities, cervicothoracic, neurologic, cardio and respiratory were all unremarkable.

[R. 329].

Also on May 17, 2007, Burnard L. Pearce, Ph.D., prepared a PRT and a mental RFC for a DLI of 12/31/2002. [R. 350-363, 364-367]. On a PRT form for the period "5/1/01 to present," Dr. Pearce wrote:

> Claimant had no medical sources since 03/05. An MSE was scheduled for 4/25/07. The claimant failed to attend the appointment and attempts to contact failed. On 05/02/07 the claimant's representative stated the claimant would be contacted concerning this. After two more attempts to obtain the information (05/07/07 & 05/10/07) the rep has not responded. There is insufficient evidence to rate.

[R. 348].

## **Discussion**

Plaintiff presents the following allegations of error: 1) the ALJ's finding that Plaintiff's insured status expired on December 31, 2002, is not supported by substantial evidence where there were six new quarters of earnings added in 2006-07 which extended his insured status to June 30, 2008; and 2) the ALJ abused his discretion by failing to order the mental and physical consultative examinations specifically requested by Plaintiff's counsel with the consequence that there is not substantial evidence in the record to support a conclusion regarding the nature and severity of Taylor's impairments for the period between 2005 and 2008. [Dkt. 17, p. 3].

**Date Last Insured (DLI)**

Plaintiff claims that it was error for the ALJ to rely upon the opinions of the agency's medical consultants because they evaluated the evidence on the basis of a December 31, 2002 date last insured. In the Response Brief filed on behalf of the Commissioner, counsel acknowledges the ALJ's "misstatement" regarding Plaintiff's DLI but contends the error is harmless because the ALJ considered the issue of Plaintiff's disability through 2008 for purposes of Plaintiff's supplemental security income (SSI) disability claim. [Dkt. 18, p. 4]. Plaintiff replies that he does not dispute this point as a general matter but argues that the case "must be remanded for other reasons" and that this error should be addressed upon remand. [Dkt. 19, p. 2].

The correct date that Plaintiff's insured status expired is June 30, 2008. The ALJ incorrectly cited December 31, 2002, as the DLI. However, the ALJ did not frame the findings in his written decision as applicable only to that time period. He summarized Plaintiff's treatment records, including the 2005 emergency room and P.A. notations, and the consultative examiners' 2004 and 2005 reports and evaluated Plaintiff's RFC as of the date of his decision. Because the ALJ considered the evidence through August 25, 2008, as it relates to Plaintiff's SSI claim, the undersigned agrees with the parties that the ALJ's misstatement of the date Plaintiff was last insured for disability insurance benefits is error but does not alone constitute grounds for remanding this case. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (quoting *Gay v. Sullivan*, 986 F.2d 1335, 1341 n.3 (10th Cir. 1993) (certain technical errors "minor enough not to under mine confidence in the determination of th[e] case").

**Requirement to Obtain Further Consultative Examinations**

Plaintiff's second allegation of error involves the ALJ's failure to order mental and physical consultative examinations that were specifically requested by Plaintiff's counsel at the hearing. He contends the ALJ erroneously relied on the lack of medical evidence in the record after July 2005 to support his step five denial; that the ALJ failed in his duty to fully develop the record by obtaining consultative examinations; and that it was legal error for the ALJ to fail to address Plaintiff's counsel's request for consultative examinations. [Dkt. 19, pp. 2-3].

An ALJ has the responsibility to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). Where the medical evidence in the record is inconclusive, "a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997); see also 20 C.F.R. §§ 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."); id. § 416.912(f). The Commissioner is given broad latitude, however, in making a decision to order such an examination. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990).

In this case, consultative examinations were ordered and obtained by the agency in 2004 and 2005. Dr. Jennings performed a physical examination on October 15, 2004. [R. 269-270]. Dr. Vaught performed a mental status examination on January 4,

13

2005. [R. 282-285]. The agency's non-examining consultants reviewed the record and conducted case analyses for the "current" period based on those examining physicians' reports and the other medical evidence in the record. [R. 281, 286-302, 321-327]. An additional mental status examination was scheduled by the agency for April 25, 2007, for which Plaintiff did not appear and attempts by the agency to contact him in May 2007 failed.[13] [R. 348].

Plaintiff is essentially arguing that supplemental consultative examinations were necessary for development of the record before the ALJ could determine his RFC during the three year gap between 2005, the date he was last examined and/or treated, and 2008, when the ALJ entered his decision. The undersigned disagrees.

In *Hawkins*, the Tenth Circuit identified three instances when consultative examinations are often required: "where there is a direct conflict in the medical evidence"; "where the medical evidence in the record is inconclusive" and "where additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d. at 1166, see also 20 C.F.$. § 404.1519a (describing when a consultative examination is appropriate). None of those conditions exist in this case.

In his appeal briefs, Plaintiff states there is a conflict between Dr. Jennings' written report and the numbers entered on the pulmonary function test. [R. 270, 275]. Review of the record, however, does not reveal a conflict requiring resolution with regard to limitations imposed by Plaintiff's COPD impairment. Dr. Jennings reported

---

[13] The regulations state that if a claimant does not have good reason for failing or refusing to take part in an ordered consultative examination, the claimant may be found not disabled. 20 C.F.R. §§ 404.1518, 416.918. However, the ALJ did not deny benefits on this basis.

that a pulmonary function test was "attempted" and that Plaintiff could not exhale long enough for an adequate evaluation. [R. 270]. The first agency consultant who reviewed Dr. Jennings' report said Plaintiff did not cooperate with pulmonary testing. [R. 281]. Another agency consultant who later reviewed Dr. Jennings' findings noted the "PFS administered 10/15/04 showed best FEV-1,3.0" but assessed no environmental limitations in Plaintiff's RFC. [R. 322, 325]. A previous spirometry test in 2000 reflected borderline obstruction. [R. 214]. Plaintiff demonstrated "COPD like symptoms" in 2000 [R. 230] and he was diagnosed with chronic lung disease in 2004. [R. 270]. Plaintiff testified at the hearing in August 2008 that COPD and emphysema made it difficult to get or keep a full time job. [R. 31]. However, Plaintiff did not complain of breathing difficulties to the emergency room physician or his attending physician's assistant at any time during his four months of treatment in 2005. [R. 26, 384-391]. This evidence was before the ALJ when he determined Plaintiff's COPD was a severe impairment and when he assessed Plaintiff's RFC.

Plaintiff's counsel did not specifically request an additional or supplemental pulmonary function test at the hearing. He simply asked for "some CE's with RFC evaluations and that sort of thing." [R. 26]. He now suggests that the evidence in the record pertaining to Plaintiff's COPD impairment needed further development. In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. *See Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994) (refusing to remand for further development where ALJ had carefully explored applicant's claims and where counsel representing claimant failed to specify the additional information sought). Because the record does not establish that an additional

attempt at a pulmonary function test was required to resolve a direct conflict in the medical evidence or to explain the diagnosis of COPD already contained in the record, the undersigned finds the ALJ's failure to obtain an additional medical examination was not error.

Plaintiff has not identified any unresolved conflict between the opinions of the medical consultants or in the medical evidence contained in the treatment records. Indeed, for all time-periods evaluated by the reviewing agency consultants, the consultants reached the same conclusions regarding the degree of limitation imposed by Plaintiff's mental and physical impairments. The objective medical evidence contained in the 2005 treatment records confirms that Plaintiff's anxiety and hypertension were poorly controlled when he did not take medication as prescribed but nothing in those records contradicts or conflicts with the agency physicians' opinions regarding Plaintiff's functional abilities or limitations. Therefore, the undersigned finds there was no direct conflict in the medical evidence that required resolution by a consultative examination.

Plaintiff has not established that the medical evidence was inconclusive for purposes of the ALJ's determination. This is not a case where the ALJ failed to acquire existing medical treatment records because, as Plaintiff admits, he did not seek medical treatment between June 2001 and July 2005. *See Hawkins*, 113 F.3d at 1166 n.5 (where evidence already exists, the ALJ must take appropriate steps to acquire it). Rather, Plaintiff suggests the ALJ could not properly rely upon the examinations conducted in 2004 and 2005 and the reviewing consultants' opinions based upon those examinations for his determination that Plaintiff was not disabled at any time through

the date of his decision. Plaintiff has not shown that additional examinations would reveal limitations that were not assessed prior to 2005 or argued that his condition worsened after 2005. His counsel has not advanced a persuasive argument that additional or supplemental consultative examinations in 2008 would have been of material assistance in determining Plaintiff's RFC for the time period between 2005 and 2008. He simply declares that, because Plaintiff had no treatment records for that time period and because the opinion evidence was three years old at the time of the ALJ's decision, the record required further development. The undersigned finds no grounds for reversal on such a basis in this case. The opinions by mental and physical consultative examining and non-examining physicians in 2004 and 2005 along with the other medical evidence in the record, including 2005 treatment records submitted by Plaintiff, provide substantial evidence for the ALJ's conclusions.

The third scenario described in *Hawkins* that would warrant a consultative examination is when tests are required to explain a diagnosis already contained in the record. A Minnesota Multiphasic Personality Inventory (MMPI) test was requested by Plaintiff's counsel at the hearing. [R. 26]. However, Plaintiff has not explained how inclusion of such a test in the record would impact the mental PRT and RFC findings of the medical experts or the ALJ's conclusions based upon those findings. Dr. Vaught conducted a mental status examination of Plaintiff in 2005 and reported his findings to the agency. In light of Plaintiff's failure to appear for a mental status examination in 2007 and his failure to demonstrate that an MMPI test was warranted, the undersigned finds the Commissioner was not required to order additional mental tests in order to assess Plaintiff's mental RFC at the time of his decision.

Finally, Plaintiff's counsel asserts the Commissioner was required to provide reasons for his failure to order the requested consultative examinations. [Dkt. 17, p. 8]. He cites a 2007 unpublished Opinion and Order by United States Magistrate Judge Sam A. Joyner in *Fortna v. Astrue*, Case No. 05-CV-587-SAJ, as authority for this contention. [Dkt. 17, p. 8]. However, the factual circumstances and the contents of the administrative record of that case differ substantially from the facts and record in the instant case.  The Tenth Circuit has consistently held that the decision to order a consultative examination is discretionary on the part of the ALJ and is to be based upon the specifics of the case under review. *Hawkins*, 113 F.3d at 1168; *Diaz*, 898 F.2d at 777.  *See also Norris v. Barnhart*, 152 Fed. Appx. 698, 108 Soc.Sec.Rep.Serv.92 (10th Cir. 2005) (unpublished) (holding that the absence of a consultative orthopedic examination did not render the administrative record deficient, even though the claimant's attorney requested a consultative examination at the hearing and the ALJ agreed to order it because "the examination's absence from the record suggests that the ALJ reconsidered the request after the hearing and determined the examination was not necessary based on the evidence of record").  The undersigned finds the ALJ did not abuse his discretion by "ignoring counsel's clear request for development."

The ALJ determined that Plaintiff's degenerative disc disease, COPD, sinus bradycardia, hypertension and depression are severe impairments, that is, that Plaintiff's ability to engage in work activities was more than minimally affected by his symptoms.  There was no need to further develop the record because sufficient information existed in the record for the ALJ to make his disability determination. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (record evidence regarding

18

claimant's daily activities and physical abilities, consultant's PRT assessment and lack of evidence suggesting impairment had greater effect on ability to work than was determined by the ALJ is sufficient to support the Commissioner's decision). The undersigned finds that Plaintiff's contentions do not warrant disturbance of the Commissioner's decision.

## Conclusion

Under the circumstances presented in this case, the undersigned finds that the ALJ's exercise of discretion in not ordering additional consultative examinations and his subsequent denial of benefits based on the record available to him at the time of his decision was proper. The Commissioner's conclusion that Plaintiff was not disabled at any time through the date of the ALJ's decision is adequately supported by the record and based upon substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before May 14, 2010.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

SO ORDERED this 30th day of May, 2010.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE